**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

ROBERT LYNN CLAY,            )
                             )
                Petitioner,  )
                             )
        v.                   )    1:12CV1010
                             )
REUBEN F. YOUNG,             )
                             )
                Respondent.  )

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 2.) On March 15, 2011, in the Superior Court of Alamance County, Petitioner pleaded guilty to felony possession of stolen goods/property and attaining habitual felon status in cases 10 CRS 57331 and 11 CRS 622. (Docket Entry 6, Exs. 1, 2; see also Docket Entry 2, ¶¶ 1, 2, 4-6.) In accordance with his plea arrangement, Petitioner received a sentence in the mitigated range of 87 to 114 months in prison. (Docket Entry 6, Exs. 1, 2; see also Docket Entry 2, ¶ 3.) Petitioner did not appeal his convictions. (Docket Entry 2, ¶ 8.)

Petitioner then filed a pro se motion for appropriate relief ("MAR") with the state trial court (Docket Entry 6, Ex. 5), which he dated as signed on April 24, 2011 (id. at 5),[1] and which the trial court stamped as filed on April 27, 2011 (id. at 2). The trial court denied the MAR by order dated and filed June 26, 2012.

---

[1] For attachments to Respondent's memorandum in support of his motion for summary judgment, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

(Docket Entry 6, Ex. 6.) Petitioner's filings in state court and this Court do not allege that he sought review in the North Carolina Court of Appeals of the order denying that MAR. (See Docket Entry 2, ¶¶ 10, 12; Docket Entry 6-8 at 3; Docket Entry 8.)

Petitioner thereafter submitted a second MAR to the state trial court, along with a Motion for Prehearing Conference and a Motion for Appointment of Substitute Counsel (Docket Entry 6, Ex. 7), all of which he dated as signed on May 10, 2012 (id. at 10, 13, 15, 20, 21).[2] The trial court denied all three motions by order dated and filed June 1, 2012. (Docket Entry 6, Ex. 8.) Petitioner then filed a pro se certiorari petition with the North Carolina Court of Appeals (Docket Entry 6, Ex. 9), which he dated as submitted on June 28, 2012 (id. at 9, 10), and which that court stamped as filed on July 6, 2012 (id. at 2). The Court of Appeals denied that petition on July 17, 2012. (Docket Entry 6, Ex. 11.)

Petitioner thereafter submitted his Petition in this Court (Docket Entry 2), which he dated as mailed on September 3, 2012 (id. at 14), and which the Court stamped as filed on September 6, 2012 (id. at 1).[3] Respondent moved for summary judgment primarily on statute of limitation grounds (Docket Entry 5) and Petitioner responded in opposition (Docket Entry 8).

---

[2] None of Petitioner's May 10, 2012 filings bear a file-stamp (Docket Entry 6, Ex. 7); nor does the trial court's order denying the motions indicate the date of filing in the trial court (id., Ex. 8).

[3] For portions of the Petition lacking paragraph numbers, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

**Petitioner's Claims**

Petitioner raises three claims for relief in his Petition: (1) the trial court violated his due process rights by representing 288 months in prison as the maximum possible sentence Petitioner could receive instead of the maximum presumptive range sentence of 185 months; (2) Petitioner received ineffective assistance of counsel because counsel "stipulated" to the incorrect, 288-month maximum sentence on the transcript of plea form; and (3) the due process violations in the plea proceedings caused actual prejudice sufficient to overcome any procedural bar to his claims. (Docket Entry 2 at 5, 6, 8.)

**Discussion**

Respondent moves for dismissal of the Petition on the grounds that the Petition was filed[4] outside of the one-year limitation period. 28 U.S.C. § 2244(d)(1). In order to assess Respondent's statute of limitation argument, the Court first must determine when

---

[4] "In [Houston v. Lack, 487 U.S. 266 (1988)], the Supreme Court held that a *pro se* prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." Morales-Rivera v. United States, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." Id. at 110-11 & n.3. In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context. See Allen v. Mitchell, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. Cf. United States v. Torres, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court). We take no position on that question here."); but see Smith v. Woodard, 57 F. App'x 167, 167 n.* (4th Cir. 2003) (implying that Houston's rule governed filing date of § 2254 petition); Ostrander v. Angelone, 43 F. App'x 684, 684-85 (4th Cir. 2002) (same). Because the difference between the date Petitioner signed his Petition (i.e., the earliest date he could have given it to prison officials for mailing) and the date the Clerk received it would not affect disposition of the timeliness issue, the Court need not consider this matter further.

-3-

Petitioner's one-year period to file his § 2254 Petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

<u>Green v. Johnson</u>, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

The record does not reveal any basis for concluding that subparagraphs (B), (C), or (D) of § 2244(d)(1) apply in this case.[5]

---

[5] In the portion of his Petition addressing timeliness, Petitioner asserts, "I could not raise these issues in my first [MAR] because I did not know about them then." (Docket Entry 2, ¶ 18.) Liberally construing Petitioner's pro se filing, <u>see</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972), this statement may constitute a potential argument that his later discovery of the factual predicate of his claims entitles him to a delayed commencement of the statute of limitations under 28 U.S.C. § 2244(d)(1)(D). However, Petitioner knew or should have known of the factual predicate of his claims, i.e., that the trial court erroneously represented 288 months as the maximum possible prison sentence on the transcript of plea form, at the time of his plea. The actual date on which Petitioner discovered the trial court's error has no bearing on the timeliness analysis because the limitations period under § 2244(d)(1)(D) commences not on the actual date of discovery but on the date the inmate could have discovered the
(continued...)

-4-

As a result, Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction ended.

Here, the state trial court entered judgment against Petitioner on March 15, 2011 (Docket Entry 6, Ex. 2) and Petitioner did not pursue a direct appeal of his convictions (Docket Entry 2, ¶ 8). As Respondent has asserted (Docket Entry 6 at 2-3), and Petitioner has failed to contest (see Docket Entry 8), Petitioner's convictions became final on the date the trial court entered judgment against him, because he pleaded guilty and received a sentence with a minimum term in the mitigated range (lower than the presumptive range) for his prior record level and class of offense, see N.C. Gen. Stat. § 15A-1340.17(c), (e) (2010). In North Carolina, defendants who plead guilty have very limited grounds on which they can appeal. See State v. Smith, 193 N.C. App. 739, 741-

---

[5](...continued)
factual predicate of his claim through public sources. See Green, 515 F.3d at 305 (holding that § 2244(d)(1)(D) limitations period began to run when trial counsel failed to appeal because such failure was "public knowledge"); Wade v. Robinson, 327 F.3d 328, 333 (4th Cir. 2003) (concluding that limitations period under subparagraph (D) commenced on date parole board revoked petitioner's parole and, by operation of law, rescinded his good conduct credits, because such information was available through "public sources"); see also Diver v. Jackson, No. 5:11-HC-2155-FL, 2012 WL 3228971, at *3 (E.D.N.C. Aug. 6, 2012) (unpublished) (rejecting argument under § 2244(d)(1)(D) that limitations period should start on date inmate told plaintiff of relevant Supreme Court case, because the case, decided in 1994, had long been available "through public sources"), appeal dismissed, 487 F. App'x 96 (4th Cir. Nov. 6, 2012). Under these circumstances, a delayed commencement of the statute of limitations under § 2244(d)(1)(D) does not apply.

-5-

42, 668 S.E.2d 612, 613-14 (2008) (enumerating limited grounds for appeal for defendants who plead guilty); see also N.C. Gen. Stat. §§ 15A-979(b) & 15A-1444. As Petitioner has not alleged or otherwise shown that any of these grounds for appeal existed, his time to file a habeas petition in this Court began to run on March 15, 2011. Hairston v. Beck, 345 F. Supp. 2d 535, 537 (M.D.N.C. 2004); accord Redfear v. Smith, No. 5:07CV73-03-MU, 2007 WL 3046345, at *2 (W.D.N.C. Oct. 17, 2007) (unpublished); Marsh v. Beck, No. 1:06CV1108, 2007 WL 2793444, at *2 (M.D.N.C. Sept. 26, 2007) (unpublished).[6]

The limitations period then ran for 43 days until Petitioner filed his first MAR in the state trial court on April 27, 2011, see Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000) (finding that no tolling applies to time period after case becomes final on direct review and before filing of MAR), and remained tolled until May 16, 2011, when the state trial court denied his MAR. 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.").[7] Because the record does not reflect that Petitioner sought review of the

---

[6] Even if Petitioner had possessed a right to appeal, any such right would have expired 14 days after the trial court entered judgment against him. See N.C. R. App. P., Rule 4(a)(2). Given when Petitioner filed his instant Petition, those 14 days would not affect the timeliness analysis.

[7] Even if the Court treated the MAR's filing date as April 24, 2011, the date Petitioner signed the document (see Docket Entry 6, Ex. 5 at 5), the extra three days would not affect the timeliness of the Petition.

-6-

MAR's denial by filing a certiorari petition with the North Carolina Court of Appeals, the limitations period began to run, at the latest, 30 days after the denial of his MAR on May 16, 2011, i.e., June 15, 2011. See McConnell v. Beck, 427 F. Supp. 2d 578, 582-83 (M.D.N.C. 2006) (ruling that North Carolina law did not explicitly identify time to seek review of denial of MAR, but that such time would not extend more than 30 days absent unusual circumstances); see also Leonard v. White, No. 1:10CV443, 2011 WL 1103793, at *2 (M.D.N.C. Mar. 23, 2011) (unpublished) (following McConnell and citing Rhue v. Carroll, No. 5:05-HC-592-BO (E.D.N.C. Aug. 28, 2006) (unpublished), appeal dismissed, 229 F. App'x 214 (2007), for more restrictive position that limitation period begins to run immediately upon denial of MAR in absence of certiorari petition). The limitations period then ran for 322 more days until it expired on May 2, 2012, without Petitioner having made any further state or federal collateral filings.

Petitioner did make further state collateral filings, which generally toll the federal habeas deadline for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)," Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). Petitioner, however, did not make any collateral filings in the state courts until May 10, 2012, eight days after

-7-

Case 1:12-cv-01010-CCE-LPA   Document 11   Filed 06/04/13   Page 7 of 11

his time to file a federal habeas claim had already expired.[8] State filings made after the federal limitations period has passed do not restart or revive the filing period. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000).

Petitioner does not dispute the foregoing time-line, but he does advance several reasons why he believes the Court should consider the Petition despite its untimeliness. (See Docket Entry 2, ¶ 18; Docket Entry 8 at 2-3.)  In other words, Petitioner has requested equitable tolling, which doctrine the Supreme Court has ruled applicable in this context, Holland v. Florida, 560 U.S. ___, ____, 130 S. Ct. 2549, 2562 (2010).  Equitable tolling may apply when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)) (emphasis added).

First, Petitioner contends that he had "no school[ing] in law," he "only know[s] what's been told to [him] by others," and he has "never had access to a law library to study." (Docket Entry 2, ¶ 18; see also Docket Entry 8 at 3.)  Petitioner's statements appear to represent an argument that he lacked familiarity with post-conviction remedies and that such unfamiliarity excuses his

---

[8] Even if Petitioner received the benefit of an additional 17 days (on grounds discussed in footnotes six and seven), such that he would have filed his second MAR before the expiration of the one-year limitations period, his instant Petition would remain untimely. Petitioner allowed 48 days to elapse between the North Carolina Court of Appeals' July 17, 2012 denial of his certiorari petition seeking review of his second MAR and the submission of his instant Petition on September 3, 2012. The one-year limitations period would have expired during this 48-day period.

-8-

late filing. However, unfamiliarity with the legal process, even in the case of an unrepresented prisoner, does not constitute grounds for equitable tolling. See United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004); March v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2001); Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999); Gray v. Lewis, No. 1:11CV91, 2011 WL 4022787, at *3 (M.D.N.C. Sept. 9, 2011) (unpublished) (citing Hood v. Jackson, No. 5:10-HC2008-FL, 2010 WL 4974550, at *2 (E.D.N.C. Dec. 1, 2010) (unpublished), and Dockery v. Beck, No. 1:02CV00070, 2002 WL 32813704, at *2 (M.D.N.C. Aug. 1, 2002) (Beaty, J., adopting recommendation of Eliason, M.J.) (unpublished)), adopted, slip op. (M.D.N.C. Nov. 4, 2011) (Beaty, C.J.)). Moreover, the State has no obligation to provide inmates with law libraries, because it authorizes North Carolina Prisoner Legal Services to assist prisoners. See Bounds v. Smith, 430 U.S. 817, 821-28 (1977) (ruling that state only must provide either prison law libraries or assistance from persons trained in the law), overruled on other grounds by Lewis v. Casey, 518 U.S. 343, 354 (1996).

In his response in opposition to Respondent's instant Motion for Summary Judgment, Petitioner asks the Court "to take 'Liberal Construction' of" his filings "and to not hold [them] and [P]etitioner to the same standards as a practiced/li[]censed attorney." (Docket Entry 8 at 2.) To the extent Petitioner contends that "liberal construction" allows the Court to disregard the statute of limitations, that argument lacks merit. Although federal courts must liberally construe the pleadings of pro se

litigants, see Haines, 404 U.S. at 520-21, the requirement of liberal construction does not "exempt [Petitioner] from compliance with relevant rules of procedural and substantive law." Carrasco v. United States, 820 F. Supp. 2d 562, 565 (S.D.N.Y. 2011) (internal quotation marks and citations omitted); accord Davis v. Underwood, No. 4:09-CV-177-EJL, 2009 WL 5064549, at *5 (D. Idaho Dec. 16, 2009) (unpublished) (observing that despite liberal construction of habeas petition, the court was "constrained to follow the law, which does not allow for lenience in calculating the statute of limitations except in very limited circumstances"); Ossenkop v. Hoefel, No. 04-1700-AA, 2006 WL 367866, at *2 (D. Or. Feb. 14, 2006) (unpublished) (holding that notwithstanding liberal construction, "ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing") (internal quotation marks and citation omitted); see also Terry v. Reynolds, No. 1:12-2094-MGL-SVH, 2012 WL 5380635, at *1 (D.S.C. Sept. 27, 2012) (unpublished) (finding no basis for equitable tolling and recommending dismissal), adopted, 2012 WL 5358321 (D.S.C. Oct. 31, 2012 ) (unpublished). Entitlement to equitable tolling requires a showing of both diligence in the pursuit of one's rights and an extraordinary circumstance which prevented a timely filing. Holland, 560 U.S. at ____, 130 S. Ct. at 2562. Even with the benefit of liberal construction, the instant Petition and materials in support fail to make either showing.

In sum, the Petition is untimely.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 5) be **GRANTED,** that the Petition (Docket Entry 2) be **DENIED,** and that this action be **DISMISSED.**

                                    /s/ L. Patrick Auld
                                 **L. Patrick Auld
                           United States Magistrate Judge**

June 4, 2013